NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0020n.06

Case Nos. 19-3204/3601

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| REYNA ESMERALDA LUQUIN-CORONEL, | ) | **FILED**<br>Jan 14, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| *Petitioner*, | ) |  |
|  | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
|  | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
|  | ) |  |
| *Respondent*. | ) |  |

O P I N I O N

BEFORE:     COLE, Chief Judge; COOK and THAPAR, Circuit Judges.

COLE, Chief Judge.  Petitioner Reyna Esmeralda Luquin-Coronel ("Luquin") is a native and citizen of Mexico who first entered the United States in 1995 and has been continuously present in this country since 2003.  Since immigration proceedings were first initiated against her, Luquin has conceded removability and sought various forms of discretionary relief under federal law.  In the proceedings below, Luquin was denied that discretionary relief.  She now appeals to this court, arguing that the Board of Immigration Appeals ("BIA") improperly determined that she was ineligible for cancellation of removal, that the immigration proceedings against her were improperly commenced, and that the BIA abused its discretion in denying a motion to have her appeal heard by a three-member BIA panel.

As set forth below, we deny Luquin's petition for review in its entirety.

## I. BACKGROUND

Luquin was born in San Martin Hidalgo Jalisco, Mexico on January 6, 1979. She first arrived in the United States in 1995, without inspection. In early 1997, she returned to Mexico, where she remained until approximately 2000. She remained in the United States from 2000 until 2002, when she again returned to Mexico. Then, in February and May of 2003, Luquin twice attempted to enter the United States, and each time was turned away by border officials. In June of 2003, Luquin successfully entered the United States, where she has remained ever since. She lives in Michigan with her husband and three of her children. Those three children are United States citizens and a fourth child, her oldest, is a noncitizen currently serving in the United States military.

On November 2, 2009, Luquin received a notice to appear charging that she was unlawfully present in the United States. The notice to appear advised Luquin that she was to appear before an immigration judge in Detroit at a time and place that would be set in the future. Then, on December 23, 2009, Luquin received a notice of hearing, which set the initial hearing for February 4, 2010. Luquin appeared at the February 4 hearing, and, at a subsequent hearing, admitted the factual allegations contained in the notice to appear, conceded removability, and asserted her intent to apply for relief from deportation in the form of cancellation and withholding of removal, or, in the alternative, voluntary departure.

The immigration judge held a hearing on the relief that Luquin sought on December 5, 2017. Following that hearing, the immigration judge issued an oral decision, wherein she denied both Luquin's application for cancellation of removal and application for withholding of removal. Concerning the application for withholding of removal, the immigration judge found that Luquin failed to establish the statutory requirements for such relief. As to the application for cancellation

of removal, the immigration judge found that Luquin could not establish ten years of continuous presence in the United States as required and defined by the statute providing for applications for cancellation of removal and, thus, denied the application.

Luquin then appealed to the BIA. The focus of that appeal, as with her petition here, was on the application for cancellation of removal. Before the BIA, Luquin requested that her case be heard by a three-judge panel and argued that the immigration judge erred in determining that she had not accrued the requisite ten years of continuous presence in light of the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The BIA ultimately decided the case using a single-judge panel and rejected Luquin's *Pereira* argument, finding that Luquin's accrual of continuous presence in the United States ended when she was served with her notice of hearing in December 2009, before she had accrued ten years.

Following the denial of her motion to reconsider, Luquin brought this timely appeal. She raises three arguments: (1) Under *Pereira*, she is eligible for cancellation of removal, and the BIA erred in determining otherwise; (2) 8 CFR 1003.14 sets forth a claims processing rule that was violated in this case and, therefore, requires the proceedings to begin anew with a new notice to appear; and (3) the BIA erred by not ruling on her motion for a three-judge panel.

## II. ANALYSIS

### A. Standard of Review

"Where . . . the BIA reviewed the [immigration judge]'s decision de novo and issued its own separate opinion, we review the BIA's opinion as the final agency determination." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (internal citation omitted). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citation omitted).

The legal questions presented here are reviewed de novo. *Sansusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007) (internal citation omitted).

### B. Eligibility for Cancellation of Removal

Luquin first argues that, under 8 U.S.C. § 1229b(b)(1) and pursuant to the Supreme Court's decision in *Pereira*, she is eligible for cancellation of removal. At issue is § 1229b(b)(1)(A)'s requirement that a person must accrue ten years of physical presence in the United States in order to be eligible for cancellation of removal. That requirement is refined by § 1229b(d)(1), which provides that a period of continuous presence terminates when a person is served with a notice to appear under 8 U.S.C. § 1229(a). This provision is known as the "stop-time rule." Among other requirements, § 1229(a) states that a notice to appear shall contain time and place information for the hearing. Prior to *Pereira*, the BIA considered a notice to appear that did not contain time and place information of the hearing to be sufficient to trigger the stop-time rule, but in *Pereira*, the Supreme Court held that a notice to appear that lacked any requirement of § 1229(a) did not trigger the stop-time rule. 138 S. Ct. at 2118.

Luquin's argument is that the stop-time rule was never triggered in her case because the notice to appear that she received in November 2009 did not contain information concerning the time or place for the hearing. The government responds that while the defective notice sent in November 2009 did not trigger the stop-time rule, the notice of hearing sent a month later triggered the rule by providing Luquin with the missing information. This issue is one that has been presented several times, both in this court and in other circuits. *See, e.g., Garcia-Romo v. Barr*, 940 F.3d 192 (6th Cir. 2019); *Niz-Chavez v. Barr*, --- F. App'x ----, 2019 WL 5446002 (6th Cir. 2019); *see also Pierre-Paul v. Barr*, 930 F.3d 684 (5th Cir. 2019); *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019).

As the government notes, our court has already resolved this issue in the government's favor, finding that the requirements of a notice to appear may be satisfied through multiple documents. *See Garcia-Romo*, 940 F.3d at 201. Thus, under our binding precedent, the stop-time rule was triggered when Luquin received a notice of hearing that provided the information missing from her initial notice to appear. As that notice of hearing was received in December 2009 prior to Luquin accruing ten years of continuous presence, the BIA correctly concluded that she was ineligible for cancellation of removal. Thus, we deny Luquin's petition for review of the BIA's decision regarding her eligibility for cancellation of removal.

## C. Claims-Processing Rule

Luquin next asserts that we should join several other circuits in holding that 8 CFR 1003.13 and 1003.14 set forth a claims-processing rule that was violated by the defective notice to appear issued to Luquin in this case. Luquin argues that this alleged violation of the claims-processing rule requires that the proceedings against her be restarted from the beginning with the issuance of a fresh notice to appear.

Luquin's argument is predicated on a faulty premise. She assumes that she was not properly served with a notice to appear and concludes that the proceedings therefore did not properly commence. But, as discussed above, the defect in the notice to appear that she received—the lack of time and place information for her hearing—was, under this court's precedent, cured by the subsequent notice of hearing that supplied the missing information. Per *Garcia-Romo*'s holding that the notice to appear requirements can be satisfied across multiple documents, the asserted claims-processing defect did not occur. Thus, we deny Luquin's petition for review on these grounds.

**D. Motion for a Three-Judge Panel**

Finally, Luquin argues that the BIA erred by failing to rule on her motion for a three-judge panel. She argues that 8 CFR 1003.1(e)(6) compels a three-judge panel in her case. She further asserts that the BIA violated her due process rights by declining to rule on her motion. These arguments, too, are foreclosed by our precedent. Assignment of a BIA appeal to a three-member panel is not mandatory in any case. *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 141 (6th Cir. 2016) (citing *Koussan v. Holder*, 556 F.3d 403, 415 (6th Cir. 2009)). We have also explained that "[t]he very act of a single-member panel affirming the [immigration judge]'s decision serves as an explanation that the BIA did not believe that the [immigration judge] made any factual or legal errors that required reversal by a three-member panel." *Id.* at 142. We therefore cannot afford relief on this basis.

### III. CONCLUSION

For these reasons, we deny Luquin's petition for review.