NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0575n.06

No. 21-3332

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CRISTHOFER CORRALES-HERRERA, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Dec 09, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW OF AN |
| | ) | ORDER OF THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE: BOGGS, THAPAR, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Cristhofer Corrales-Herrera applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). *See* 8 U.S.C. §§ 1158(a) & 1231(b)(3). The Immigration Judge (IJ) denied his claims, and the Board of Immigration Appeals (BIA) dismissed his appeal. He now petitions us for review of the BIA's decision. We DENY the petition.

Corrales-Herrera is a twenty-one-year-old native and citizen of Honduras who came to the United States as an unaccompanied minor in February 2014. His parents live in the United States, but he has many family members still in Honduras. He is not married and has no children.

Shortly after his arrival in the United States, Corrales-Herrera was charged as removable for entering the country illegally and released to live with his parents in Tennessee. The IJ sustained his removability charge, and Corrales-Herrera applied in January 2016 for asylum, withholding of removal, and protection under the CAT, making the same central argument that he

does here—that he fears persecution by gangs should he be forced to return to Honduras. He bases his fears on threats from gang members and violence he and his family have suffered at the hands of Honduran gangs.

Although there were inconsistencies between his testimony to an asylum officer and his in-court testimony, the IJ found Corrales-Herrera to be credible. The IJ thoroughly considered his arguments and, while she was "very sympathetic" to his situation, in October 2018 she ordered Corrales-Herrera to be removed to Honduras. Corrales-Herrera then appealed to the BIA, which dismissed his appeal in March 2021, adopting the reasoning of the IJ and affirming her findings.

Corrales-Herrera timely appealed to this court, arguing that the BIA's decision to affirm the IJ is not supported by substantial evidence. He claims that he has adequately established (1) his claim for asylum, (2) his claim for withholding of removal, and (3) his claim under the CAT. We take each in turn.

We have jurisdiction to review a final order of removal issued by the BIA under 8 U.S.C. § 1252. *See Marikasi v. Lynch*, 840 F.3d 281, 286 (6th Cir. 2016). "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). But "to the extent the BIA adopted the immigration judge's reasoning, this court also reviews the immigration judge's decision." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (citing *Khalili*, 557 F.3d at 435). It did, so we review both decisions here.

We review the BIA's factual findings under a deferential "substantial evidence" standard. *Marikasi*, 840 F.3d at 286 (quoting *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012)). Under this standard, "[a] reviewing court should not reverse simply because it is convinced that it

would have decided the case differently." *Id.* (quoting *Sylla v. I.N.S.*, 388 F.3d 924, 925 (6th Cir. 2004)); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."). Rather, "[r]eversal is warranted only when the evidence not only supports a contrary conclusion, but indeed *compels* it." *Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020) (internal quotation marks omitted) (emphasis in original) (quoting *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014)).

To receive asylum, Corrales-Herrera must show that he is a "refugee." *See* 8 U.S.C. § 1158(b). A "refugee" is someone "who is unable or unwilling to return to [his] home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010)). Corrales-Herrera bears the burden of showing that one of the above grounds "was or will be at least one central reason" for his persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *Juan Antonio*, 959 F.3d at 789.

Although the Immigration and Nationality Act (INA) does not define persecution, we have many times. And what constitutes persecution presents a high bar for him to meet. *See, e.g., Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (quotation omitted) ("Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive.").

Corrales-Herrera claims that he was persecuted or has a well-founded fear of future persecution because he was recruited, beaten, threatened, and robbed by gangs and because he witnessed violent episodes involving his family members at the hands of these gangs. While these claims are troubling, none rises to the level of persecution. *See Patel v. Gonzales*, 126 F. App'x 283, 292 (6th Cir. 2005) (citation omitted) ("The record shows that Petitioner and his family have

3

been the victim of several crimes, but such generalized lawlessness normally does not constitute persecution."). After all, "[g]eneral conditions of rampant gang violence alone are insufficient to support a claim for asylum." *Umana-Ramos*, 724 F.3d at 670-71. Instead, "the context must indicate that the asylum applicant is targeted for abuse based on his membership in a protected category." *Id*. (citation omitted). And for the reasons explained below, substantial evidence supports the agency's conclusion that Corrales-Herrera did not make that showing.

Corrales-Herrera argues that he has been or would be targeted for abuse based on his membership in a particular social group—specifically, that he is a young Honduran male with no home or parental protection. Although the INA does not define "particular social group," we have often interpreted what this language means. For example, the social group must be "particular" and "socially visible." *Bonilla-Morales*, 607 F.3d at 1137. And a particular social group "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010); *see also Umana-Ramos*, 724 F.3d at 673 (finding that even a group as specific as "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" was not sufficiently cognizable). We give deference to the BIA's definition of a particular social group. *Umana-Ramos*, 724 F.3d at 671-72.

Corrales-Herrera is rather unclear as to his particular social group. He argued to the BIA that he was a member of two groups targeted for abuse: (1) Honduran males between ages 14 and 18 with no parental protection and (2) family members of his father. The IJ and the BIA found that the first group "does not share a common immutable characteristic, is not defined with particularity, and is not socially distinct within Honduran society." Nor is there any evidence in the record that his parents, ostensibly still in the United States, could not accompany him back to

4

Honduras to provide parental protection. The IJ did accept the second group as cognizable and sufficiently particularized but found no evidence he had been or would be targeted on account of his membership in that particular group. We agree.

Now age twenty-one (and therefore no longer part of a group of teenagers), Corrales-Herrera changes his alleged social group in his brief to this court, broadening the age range to include all "young Honduran males" and adding "homelessness" into the description. This attempt to circumvent the obvious mootness of his earlier claim runs head-on into the INA's exhaustion requirements. 8 U.S.C. § 1252(d)(1). After all, his claim to membership in this new, more generalized social group was never before the agency. *Cf. Viuda de Mejia v. Sessions*, 691 F. App'x 245, 248 (6th Cir. 2017). So his claim of membership in a particular social group fails for this reason too. *See Alvizures-Gomes v. Lynch*, 830 F.3d 49, 53 (1st Cir. 2016) (noting that a "cognizable social group does not exist merely because an alien can conjure up a description of it.").

Corrales-Herrera rests his withholding of removal and CAT claims on the same facts he used for his asylum claim. With respect to his withholding of removal claim, Corrales-Herrera argues for the first time here that the BIA erred in applying the "one central reason" standard from § 1158 in light of our recent decision in *Guzman-Vazquez v. Barr*, 959 F.3d 253 (6th Cir. 2020). It is true that *Guzman-Vazquez* held that withholding of removal claims need only show that a protected ground will be "a reason" for a petitioner's persecution, rather than a "central reason." *Compare id*. at 272, *with* 8 U.S.C. § 1158(b)(1)(B)(i). However, a petitioner must "preserve each claim by presenting it to the BIA." *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004). Corrales-Herrera never raised *Guzman-Vazquez*'s potential application below, even though *Guzman-Vazquez* was decided several months before he filed his appeal to the BIA. And a

petitioner's failure to exhaust a claim deprives us of jurisdiction over it. *See, e.g., Khalili*, 557 F.3d at 433; *Madrigal v. Holder*, 572 F.3d 239, 243 (6th Cir. 2009). Therefore, we are unable to consider Corrales-Herrera's withholding of removal claim.

Corrales-Herrera's claim for relief under the CAT is also wanting. To succeed, Corrales-Herrera would have to show that it is more likely than not that he would be tortured by or with the acquiescence of the Honduran government. 8 C.F.R. §§ 1208.16(c), 1208.18(a); *see Mapouya v. Gonzales*, 487 F.3d 396, 414 (6th Cir. 2007); *see also Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015) (citation omitted) ("The CAT does not afford protection to torturous acts inflicted by wholly private actors."). He has shown no evidence of such government involvement or acquiescence.

Corrales-Herrera did not show evidence of past persecution or a well-founded fear of future persecution on account of his membership in a particular social group or evidence that he would be tortured by or with the acquiescence of the Honduran government. We therefore DENY the petition.