**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0617n.06

Nos. 18-3037, 19-3011

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MAYLEN PANAFLOR DABLE,                         )
                                               )
     **Petitioner,**                        )         ON PETITION FOR REVIEW OF
                                               )         ORDERS OF THE BOARD OF
v.                                             )         IMMIGRATION APPEALS
                                               )
WILLIAM P. BARR, Attorney General,             )
                                               )         **OPINION**
     **Respondent.**                       )

**FILED**
Dec 13, 2019
DEBORAH S. HUNT, Clerk

Before: MOORE, CLAY, and SUTTON, Circuit Judges.

MOORE, J., delivered the opinion of the court in which CLAY, J., joined, and SUTTON, J., joined in all but footnote 6 (pp. 8–9) of the majority opinion.

**KAREN NELSON MOORE, Circuit Judge.** In these partially consolidated cases, Petitioner Maylen Panaflor Dable seeks review of two decisions by the Board of Immigration Appeals ("BIA") denying her motions to reopen her removal proceedings.[1] Because we lack jurisdiction to review the BIA's denial of her first motion to reopen, requesting that the BIA exercise its discretion to reopen her proceedings sua sponte, we dismiss Dable's petition in Case No. 18-3037. We dismiss her petition in Case No. 19-3011 for the same reason. We cannot consider her argument that her second motion to reopen was subject to equitable tolling until *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), was decided because she failed administratively to

---

[1]Due to the overlapping factual and legal nature of Dable's cases, we issue one combined decision, which will be docketed under both case numbers.

exhaust this argument. Thus, we must treat the second BIA decision as one declining to exercise its discretion to reopen her proceedings sua sponte, which we lack jurisdiction to review.

## I. BACKGROUND[2]

Dable is a citizen of the Philippines, who in 2001 was admitted to the United States with a one-year H-2B nonimmigrant visa. Administrative Record ("A.R.") at 26. It appears that Dable was the victim of a scheme where individuals obtained the visa for her and purported to offer her a three-year work contract in the United States, renewable every six months, in exchange for $3,500. *See id.* at 159. After the first six months, her contract was not renewed. *Id.* Dable moved to Michigan, hoping to find a reputable employer to file for a new work visa for her. *See id.* But Dable was not so lucky, and she overstayed her visa and worked without authorization. *Id.* at 26.

In May 2004, Dable was detained during a trip to visit her brother. *Id.* at 157. Because she had overstayed her visa, she was charged as a deportable alien present in violation of 8 U.S.C. § 1227(a)(1)(B). *Id.* at 26. The notice to appear, which detailed the charge, provided that the date of the hearing was "on a date to be set" and "at a time to be set." *Id.* Eleven days later, she received a notice of hearing from the immigration court that provided a date, time, and location for her removal proceedings. *Id.* at 278. After various rescheduling and continuances, as well as a change of venue, Dable had a hearing on August 25, 2004 in Detroit, Michigan. *Id.* at 261–76. It is undisputed that Dable conceded removability. The Immigration Judge ("IJ") ordered her removed and granted her voluntary departure; Dable had until December 23, 2004 to return to the Philippines. *Id.* at 259–60.

---

[2]We cite the administrative record in Case No. 19-3011, which includes the administrative record in Case No. 18-3037.

However, Dable continued without authorization to work to support her family in the Philippines and pay off her debts. *Id.* at 158. In April 2005, she met her husband, Dari Ray Fritz, and in December 2006, the couple married. *Id.* at 167. Dable and Fritz have three living children; their first child died a month after birth due to a "[r]are [c]hromosomal [d]isorder." All three living children have ongoing medical issues, and Dable is the cornerstone of their care because of Fritz's atypical work schedule. *Id.* at 162–63.

## A. Basis of Petition in Case No. 18-3037

Dable and Fritz attempted to address Dable's immigration status. Fritz is a United States citizen, *see id.* at 234, which allowed him to file an I-130 Immigration Petition for Alien Relative for Dable. *Id.* at 169. It was approved in July 2011. The couple filed an I-485 Application to Adjust Status for her in March 2012,[3] but the U.S. Citizenship and Immigration Services ("USCIS") denied her application. *Id.* at 214. USCIS determined that it lacked jurisdiction to adjust Dable's status because she was in removal proceedings; only the IJ had jurisdiction to adjust her status.[4] *Id.*

Dable filed an untimely motion to reopen her removal proceedings on May 2, 2017. *Id.* at 147. She urged the IJ to exercise his discretion to reopen her proceedings sua sponte due to her approved I-130 and her statutory eligibility for adjustment of status, which were unavailable to her at the time of her removal hearings in 2004. Dable also argued that that the IJ should exercise his

---

[3]Approval of an I-130 Petition does not necessarily give applicants status in the United States; it "is only the first step in helping an eligible relative immigrate to the United States." *I-130, Petition for Alien Relative*, U.S. CITIZENSHIP AND IMMIGRATION SERVS. (Oct. 28, 2019), https://www.uscis.gov/i-130. An approved I-485 Application will lead to status in the United States. *See id.*

[4]USCIS has jurisdiction to adjudicate the adjustment of applications of some arriving noncitizens, while IJs, "subject to review by the [BIA], decide adjustment applications for most noncitizens who are in removal proceedings." *Rais v. Holder*, 768 F.3d 453, 455–56 (6th Cir. 2014) (alteration in original) (quoting *Marrakchi v. Napolitano*, 494 F. App'x 877, 887 (10th Cir. 2012) (Lucero, J., dissenting)).

discretion to reopen her case because, among other positive personal factors, the BIA historically granted such motions where the object was to seek adjustment of status. The government opposed Dable's motion, arguing that she had "not alleged the rare and extraordinary circumstances that the [BIA] has repeatedly stated are required for such a reopening." *Id.* at 137. The IJ denied Dable's motion in June 2017, reasoning that she had not demonstrated "an exceptional situation," but that even if she had, the IJ would decline to exercise his discretion because she "affirmatively chose to remain in the country without authorization," "failed to take any action until recently" to address her status, and "any positive equities in [Dable's] case were largely accumulated after she chose to remain in the United States past the authorized period given for her to voluntarily depart the country." *Id.* at 134–35.

On appeal to the BIA, Dable argued that the IJ abused his discretion because he failed to explain his reasoning adequately, was biased given the evidence in the record that any delay was not due to her own lack of diligence, did not address the deteriorating conditions in the Philippines, and departed from an historical practice of granting motions under similar circumstances. *Id.* at 100–06. The government filed a motion for summary affirmance. *Id.* at 90. In December 2017, the BIA dismissed her appeal, stating that it agreed with the IJ that Dable had not presented evidence demonstrating an exceptional situation. *Id.* at 85. Dable seeks review of this 2017 BIA decision. No. 18-3037, Petition ("Pet. I").

### B. Basis of Petition in Case No. 19-3011

Dable filed a Motion to Rescind with the BIA on June 29, 2018. A.R. at 18–23. We agreed to hold Dable's petition in Case No. 18-3037 in abeyance so that she could file a motion with the BIA in light of *Pereira*. No. 18-3037, Order Holding in Abeyance (Aug. 20, 2018). Dable asked

the BIA to find her removal order void, rescind the order, and dismiss the proceedings. A.R. at 18–23. She argued that under *Pereira*, the IJ never had jurisdiction over her removal proceedings because the notice to appear lacked the date and time of those proceedings and this defect could not be cured by a subsequent notice of hearing providing that information. In the alternative, she asked the BIA to rescind the order and remand her case so that the IJ could consider her application for cancellation of removal because *Pereira* at least demonstrated that the stop-time rule was not triggered by a notice of hearing that cured a defective notice to appear, meaning that she had accrued enough time in the United States to be eligible for cancellation of removal. The government opposed her motion to rescind, but only on the basis of her jurisdictional argument. *See id.* at 5–12.

In December 2018, the BIA denied her motion, which it construed as a motion to reopen removal proceedings sua sponte. *Id.* at 3–4. The BIA concluded that *Pereira* did not foreclose its decision that the two-step process consisting of a deficient notice to appear and a curative notice of hearing vested the immigration court with jurisdiction. It also denied her motion based on her purported eligibility for cancellation of removal because, assuming the IJ had jurisdiction but that the time-stop rule was not triggered by the two-step process, she accrued time only until her valid removal order was issued three years after she arrived. *Id.* at 4. Dable filed a second petition seeking review of this 2018 BIA decision. No. 19-3011, Petition ("Pet. II"). The Retired Immigration Judges and Former Members of the Board of Immigration Appeals filed an amicus brief in this case.

Dable also filed a petition for an initial en banc hearing, asking us to reconsider our decisions in *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018), and *Santos-Santos v.*

5

*Barr*, 917 F.3d 486 (6th Cir. 2019). No. 19-3011, Initial En Banc Pet. (May 6, 2019). She filed additional citations, one pointing to *Matter of Mendoza-Hernandez*, 27 I & N Dec. 520 (BIA 2019) (en banc), No. 19-3011, First Add'l Citation (May 6, 2019), and another pointing to *Lopez v. Barr*, 925 F.3d 396 (9th Cir. 2019), and *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019), No. 19-3011, Second Add'l Citation (May 22, 2019). We denied this petition. No. 19-3011, Order Den. Initial En Banc Pet. (June 18, 2019).

## C. Shared Procedural History

We ordered that these cases be partially consolidated so that the same panel would consider both petitions. Nos. 18-3037/19-3011, Order Granting Mot. to Consolidate (Mar. 11, 2019). Dable filed another motion to consolidate her cases, this time with other cases relying on *Pereira* in seeking review of BIA decisions denying relief. Nos. 18-3037/19-3011, Second Mot. to Consolidate (Oct. 2, 2019). We denied the motion. Nos. 18-3037/19-3011, Order Den. Mot. to Consolidate (Oct. 7, 2019).

## II. ANALYSIS

## A. Petition in Case No. 18-3037

In her first petition, Dable asks us to review the BIA's 2017 decision not to reopen her removal proceedings, Pet. I at 7–9, but it is clear that we lack the jurisdiction to review the decision. BIA regulations permit the sua sponte reopening of removal proceedings. *Mata v. Lynch*, 135 S. Ct. 2150, 2153 (2015) (citing 8 C.F.R. § 1003.2(a) (2015)). But the BIA exercises this authority only in "exceptional situations" because "[t]his power 'is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship.'" *Pereyra v. Barr*, 784 F. App'x 942, 944 (6th Cir. 2019) (quoting *In re J-J-*, 21 I & N

Dec. 976, 984 (BIA 1997)). It is well settled that the BIA's decision to reopen removal proceedings sua sponte "'is committed to the unfettered discretion of the BIA' and therefore is not subject to judicial review." *Rais*, 768 F.3d at 460 (quoting *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008)). In short, we are precluded from reviewing the BIA's decision not to exercise its discretionary sua sponte authority.

Dable argues that we have jurisdiction to review the BIA's decision. First, she contends that the Supreme Court in *Mata* established our jurisdiction to review BIA decisions declining to exercise its discretionary sua sponte authority. Pet. I at 1–2. But the Court in *Mata* held that federal courts have jurisdiction to review denials of motions to reopen that seek equitable tolling of the statutory filing deadlines because those motions are still statutory motions to reopen. *See Mata*, 135 S. Ct. at 2154–55 (explaining that the Fifth Circuit had characterized the motions as ones relying on the BIA's discretionary sua sponte authority). The Court did not address whether courts have jurisdiction to review BIA decisions declining to exercise discretion to reopen removal proceedings sua sponte except to explain that the BIA's decision not to exercise that authority was an "extra ruling" that did not cause the court of appeals to lose jurisdiction over the BIA's decision denying the petitioner's statutory motion to reopen. *Id.* at 2155. *Mata* has no bearing here.[5]

Second, Dable argues that we have limited jurisdiction to review the BIA's sua sponte decisions when it "has relied upon an incorrect legal premise." Pet. I at 2 (quoting *Lisboa v. Holder*, 570 F. App'x 468, 472 (6th Cir. 2014)). But we have yet to decide this question, and we

---

[5]For this reason, Dable's argument that we should reexamine our precedent, *Barry*, 524 F.3d at 723, and *Harchenko v. INS*, 379 F.3d 405 (6th Cir. 2004), holding that we lack the jurisdiction to review BIA decisions declining to exercise its discretion to reopen proceedings sua sponte because of *Mata* is unavailing. *See* No. 18-3037, Reply Br. at 2–3. She also argues that our decision in *Gor v. Holder*, 607 F.3d 180 (6th Cir. 2010), undermines this precedent, No. 18-3037, Reply Br. at 2, but we were clear in *Gor* that "[t]hose decisions remain the law of this circuit," 607 F.3d at 188; *see also Rais*, 768 F.3d at 462.

decline to do so here because, like the plaintiff in *Lisboa*, Dable fails to identify an incorrect *legal* premise that the BIA relied upon in its decision. *See Lisboa*, 570 F. App'x at 473. Dable points to an alleged policy or historical practice of reopening removal proceedings to adjust status relying on family-based visas, Pet. I at 12–14, but this is not a legal premise, *see Pllumi v. Att'y Gen. of U.S.*, 642 F.3d 155, 163 (3d Cir. 2011) (identifying 8 C.F.R. § 1208.13(b)(1)(iii)(B)); *Mahmood v. Holder*, 570 F.3d 466, 471 (2d Cir. 2009) (identifying Supreme Court precedent and an amendment to 8 C.F.R. § 1240.26(e)(1)). There is no statute or regulation providing when the BIA must exercise its discretionary sua sponte authority to reopen removal proceedings. *See Uritsky v. Holder*, 327 F. App'x 605, 610 (6th Cir. 2009) (quoting *Harchenko*, 379 F.3d at 411).

**B. Petition in Case No. 19-3011**

Dable argues that her second motion to reopen is a statutory motion to reopen because she could not file it until *Pereira* was decided, thereby equitably tolling the statutory filing deadline. Pet. II at 2–5. She also argues that *Pereira* demonstrates that the two-step process consisting of a notice to appear lacking the date and time of removal proceedings and a notice of hearing later supplying the date and time does not confer jurisdiction to the immigration court, nor does it trigger the stop-time rule for cancellation of removal. *Id.* at 17–42. However, Dable failed administratively to exhaust her equitable-tolling argument, requiring us to treat the BIA's 2018 decision as one not to exercise its discretionary sua sponte authority to reopen removal proceedings.[6]

---

[6]We make two observations regarding Dable's *Pereira* arguments, however. First, the amicus urges us to conclude that the two-step process is insufficient to confer jurisdiction to immigration courts under *Pereira* and that we must reach this conclusion—despite far-reaching practical consequences—and leave the rest to Congress. Amicus Br. at 2–10. Given the collective experience of the amicus retired immigration judges, their position warrants serious consideration.

A noncitizen may "'file one motion' with the IJ or Board to 'reopen his or her removal proceedings'" under 8 U.S.C. § 1229a(c)(7)(A). *Mata*, 135 S. Ct. at 2153 (quoting *Dada v. Mukasey*, 554 U.S. 1, 4–5 (2008)). Federal courts of appeals have jurisdiction to review BIA decisions denying statutory motions to reopen. *Id.* (citing *Kucana v. Holder*, 558 U.S. 233, 242, 253 (2010)). A statutory motion to reopen must generally "be filed within 90 days of the date of entry of a final administrative order of removal," § 1229a(c)(7)(C)(i), although this requirement is subject to exceptions, *Rais*, 768 F.3d at 459 (citing 8 C.F.R. § 1003.2(c)(3)(i)-(iv)), and equitable tolling, *Gor*, 607 F.3d at 184 (citing *Barry*, 524 F.3d at 724).

However, federal courts of appeals lack jurisdiction to consider arguments that were not exhausted administratively before the BIA. *Yinggui Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009) (citing 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 559–60 (6th Cir. 2004)). "[T]his Court has explained that the issue must be reasonably developed in the petitioner's brief

---

Second, there are new approaches gaining traction among the circuits. In *Ortiz-Santiago*, the Seventh Circuit concluded that *Pereira*'s plain-text interpretation of "a 'notice to appear'" in 8 U.S.C. § 1229(a)(1) prohibits the two-step process and that this interpretation applies to "a Notice to Appear" in the regulations that purport to define immigration courts' jurisdiction, 8 C.F.R. § 1003.13 and 8 C.F.R. § 1003.14. 924 F.3d at 959–61. But the court concluded that this did not impact the immigration court's subject-matter jurisdiction because the regulation is a "claim-processing rule[ ]" and so any objections regarding the rule are forfeitable. *Id.* at 692–63; *see also Pierre-Paul v. Barr*, 930 F.3d 684, 691–93 (5th Cir. 2019) (finding the two-step process sufficient to confer jurisdiction, but concluding in the alternative that 8 C.F.R. § 1003.13 is a claims-processing rule). In reaching its conclusion, the Seventh Circuit rejected as "absurd" the government's argument that even if *Pereira* compelled such a result for the statutory text, it did not do so for the regulations. *Ortiz-Santiago*, 924 F.3d at 961–62. We, however, relied on the government's argument in part in *Santos-Santos*. 917 F.3d at 490 n.4. The Ninth Circuit also recently reversed itself, holding that *Pereira* compels the conclusion that the two-step process does not trigger the stop-time rule. *Lopez*, 925 F.3d at 399–400. We rejected the reasoning of *Lopez* in *Garcia-Romo v. Barr*, 940 F.3d 192, 203–04 (6th Cir. 2019), but only after scant textual analysis, *see id.* at 200–01, and while bound by our prior decisions interpreting *Pereira* in the jurisdictional context, *Hernandez-Perez* and *Santos-Santos*, which were decided without considering the *Ortiz-Santiago* approach.

Were we writing on a blank slate, we would be inclined to follow the Seventh Circuit's approach and at least conclude that § 1003.14 is a claims-processing rule. We would then be amenable as well to reexamining how the two-step process implicates *Pereira*. In any event, given the conflicts among the circuits, the time may be ripe for Supreme Court review.

to the BIA," otherwise the issue is forfeited. *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009) (citing *Hasan v. Ashcroft*, 397 F.3d 417, 419–20 (6th Cir. 2005)).

Dable did not reasonably develop her equitable-tolling argument in her brief to the BIA. She did not mention the doctrine of equitable tolling or apply any relevant case law, such as the five-factor test we use to evaluate whether equitable tolling applies, *Barry*, 524 F.3d at 724 (quoting *Ajazi v. Gonzales*, 216 F. App'x 515, 518 (6th Cir. 2007)). She stated that her "motion is not time or numerical [sic] barred because, under the Supreme Court holding [in *Pereira*], removal proceedings have not yet lawfully commenced and as such the order is nullified *ab initio*." A.R. at 18. This argument focuses not on equitable tolling, but on a lack of valid proceedings from the beginning due to nonexistent jurisdiction. *See id.* at 19–23. Dable did not exhaust her equitable-tolling argument, and so we cannot consider it. Therefore, the only option is to treat the BIA's 2018 decision as one denying her motion to reopen her removal proceedings sua sponte, which we lack jurisdiction to review.

Dable raises two counterarguments, but neither is successful. She argues that the BIA erred by failing to address the five-factor test for equitable tolling, No. 19-3011, Reply Br. at 7, but it is her burden to "properly present[ her claims] to the BIA" so that they can be "considered on their merits," *Hasan*, 397 F.3d at 419 (quoting *Ramani*, 378 F.3d at 560). Dable also argues that the government forfeited its argument that she did not exhaust administratively her equitable-tolling argument because it failed to object to her assertion that her motion was not time-barred or numerically-barred. No. 19-3011, Reply Br. at 6. Given Dable's failure to present properly her equitable-tolling argument to the BIA, we cannot say that the government forfeited its objection. In any case, subject-matter jurisdiction "can never be forfeited or waived." *Hernandez-Perez*,

911 F.3d at 310-11 (quoting *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 81 (2009)); *see also Kuppusamy v. Holder*, 437 F. App'x 452, 455 (6th Cir. 2011) (concluding that failure administratively to exhaust results in a lack of subject-matter jurisdiction). Thus, there is no bar to determining that we lack jurisdiction to consider Dable's equitable-tolling argument.

### III.  CONCLUSION

For these reasons, we **DISMISS** Dable's petitions for judicial review of the BIA's decisions.